Good morning, your honors, and may it please the court, Raj Shah for Appellate Petitioner Martin John Cage. I'd like to reserve three minutes to rebuttal. Sure. During the federal proceedings below, Mr. Cage discovered exculpatory evidence showing that someone else was convicted of the crime, committed the crime that he was convicted of. All Mr. Cage seeks now is a stay in the federal proceedings so that he can go back to state court and present this evidence to the state court. We've never seen this evidence because trial counsel never presented it. The district court below abused its discretion when it denied Mr. Cage this stay, and that's the case for a number of different reasons we've set out in our briefs. But for today, I'd like to focus on the first of those reasons, and that is that Mr. Cage showed good cause for a stay under Ryan v. Weber because he showed that he didn't have appointed state post-conviction counsel. And I'd like to start by talking about this court's decision in Dixon v. Baker. In Dixon, this court established a bright line rule that a petitioner's lack of counsel in state post-conviction proceedings is good cause for his failure to exhaust under Ryan's. And applying this bright line rule to this case, this establishes that Mr. Cage had good cause for his failure to exhaust under Ryan's because like the petitioner in Dixon, he too lacked state post-conviction counsel. So Mr. Shaw, the government attempts to distinguish Dixon by arguing that, or rather, excuse me, the state, because they argue that in that case, Mr. Dixon filed a petition. He was not counseled. He filed a petition. He omitted the claim at issue. And in this case, Mr. Cage didn't file a petition at all. Is that a distinction without a difference or does it matter? I don't think it matters, Your Honor. And the reason I say that is that when we look at the plain language of the Dixon opinion, it's pretty apparent from the language that the state habeas petition in that case was simply an incidental fact in that case. It was a fact in the background. It had no connection to the court's holding in that case. It had no connection to the fact that the petitioner in that case was excused for his failure to exhaust. The fact of the matter is that in that case, the operative fact was that the petitioner in that case lacked counsel and couldn't be expected to file a state habeas petition to exhaust his claims on his own. That was the central consideration for this court in that case. I'm sorry to interrupt you. I guess one basis to try to distinguish would be that if you filed a petition, a deficient petition, it would be some information from which the court could find that the petitioner was diligent. And here, without a petition being filed at all, how do we distinguish the reason? Was it good cause because he didn't have counsel or was he just sitting on his rights and he wasn't diligent? Well, your honor, I mean, I do know that the diligence question is addressed in a separate prong of the Ryan's test. So diligence isn't a central inquiry when we're looking at good cause. The good cause inquiry is concerned solely with whether a petitioner has a reasonable excuse for his failure to exhaust. And lack of counsel operates as such a reasonable excuse because a pro se petitioner can't be expected to raise his claims on his own because of a lack of resources and because of a lack of knowledge that counsel would be able to provide. As to the question of sleeping on his rights, I think that goes to the facts of this case. And the facts of this case show that Mr. Cage wasn't sleeping on his rights at all. In fact, when you look at the record, the record shows that from the very beginning of this case, all the way back to the direct appeal, Mr. Cage was repeatedly thinking about how he could raise evidence in state court about the ineffectiveness of trial counsel. During the direct appeal proceedings, he tried to get his trial counsel's file, but he was unable to get it from trial counsel because trial counsel said he didn't have the funds provided to him. So when that option didn't work, he tried to get these files through his wife. He asked his trial counsel to send these files to his wife, but then that option didn't work because his wife apparently lacked postage funds to send these files to him by mail. So then he tried to get these files through his prison inmate, Mr. Dean Rodriguez, and that option apparently didn't work either. So what happened was that by the time the statute of limitations deadline rolled around in July of 2017, he was left without the documentary evidence he needed to exhaust. And so he did the only thing that he could do in that circumstance. He did the thing that the Supreme Court in pace advised him to do. He filed a protective petition in federal court. So when we look at the history of Mr. Cage's efforts to get the documentary evidence from his trial counsel, the record shows that he wasn't sleeping on his rights. He simply did everything possible that he could in order to get those files. So what should we do? I mean, if we agree, what should we do? The district court didn't reach the second and third crimes of Rimes. Did we remand for the district court to consider those issues? Do we act on those issues in the first instance? What's your position? I think this court should decide these issues in the first instance. And that's exactly what the court did in Dixon versus Baker. The district court in that case also only decided the good cause issue and didn't decide the other two requirements. This court found, presumably for reasons of judicial economy, that the other two requirements were easily satisfied in that case. And in this case, it's the same logic. The judicial economy suggests that we should, that this court should decide these two other issues right now. And when we look at these two issues, it's fairly clear from the record that Mr. Cage satisfied both of those requirements. Speaking to the second Rimes requirement, he only needs to show that he has some hope of prevailing on at least one of his unexhausted claims. And looking at the evidence that he's deduced from his trial counsel's file, it's at least clear that he has some hope of prevailing because the other observatory evidence consists of witness statements that his trial counsel should have presented at trial, which trial counsel completely failed to do. Looking to the third Rimes requirement, the state didn't contest this third requirement during the district court proceedings. In fact, the state had numerous opportunities to do so, and yet it utterly failed to raise that point. It only contested the first and second requirements of the Rimes. So, and in addition, it would make no sense for Mr. Cage to attempt to delay these proceedings or intentionally engage in dilatory tactics because unlike the capital petitioner, Mr. Cage would have no incentive to do so. At bottom, his basic contention in his unexhausted claims is that someone else committed the crime that he was convicted of. And if he wins on that claim, he could potentially be released from custody. So in the end, he has no real incentive to delay these proceedings. So I think he wins on that requirement as well. Mr. Schott, can I take you back to the good cause discussion that you had earlier with Judge Beatty? In Dixon, they relied heavily on Martinez, or they look to Martinez for guidance. In a Martinez situation, does it make any difference that the petitioner did not file a habeas petition, a state habeas petition? Well, no, your honor. And I just think that this procedural situation is so interesting and so unusual that it wouldn't even come up in the Martinez context. Usually in the Martinez context, the state habeas petitioner has already filed something, but has just neglected to raise ineffective trial counsel claim. And the issue is whether that claim is procedurally defaulted. And that being said, I don't think that particular procedural wrinkle matters at all. The procedural background just doesn't matter because in Martinez on pages 11 through 12 of the Supreme Court's opinion, the court made clear what the real problem was. The problem wasn't whether the petitioner had filed a state petition or not. The problem was that a pro-state petitioner lacking counsel simply just doesn't have the logistical resources or the knowledge to be able to raise these claims properly. And that's why in Martinez, analogously to Dixon, the Supreme Court set down a bright line rule that the absence of counsel by itself is cause to overcome a procedural defaulted ineffective assistance of trial counsel claim. And I think it bears worth mentioning that the Supreme Court's rule doesn't turn on the facts of a particular case. So when you apply the Martinez rule, you don't look at the petitioner's subjective state of mind or what he knew or what he didn't know. All that's an issue is whether he has counsel. And if he has counsel, then the bright line rule holds that automatically establishes a good cause to overcome the procedural default. Mr. Shah, aren't you basically arguing to us that the first prong of rinds goes away because almost every petitioner is pro se? And if we say that you don't have to file a state petition, in a sense, there's no first prong of rinds anymore. Well, I don't think it's just me saying it, Your Honor. I think that the court in Dixon very clearly said that. I'm specifically talking about the page 722 of Dixon, where this court recognized that, of course, many state post-conviction proceedings are conducted pro se. For this group of federal habeas petitioners, the first element of the test would be met. That's binding authority, Your Honor. And while we might disagree with it, I think it controls this case. But speaking to Your Honor's concern, I don't think this will open the floodgates to rind stays for everyone, every single habeas petitioner. Because as this requirement of rinds would winnow out many different requests for rind stays and would only allow for rind stays in cases where petitioners meet the other two requirements. One last point, Your Honor, I would also note that this court in Blake v. Baker said that when we're defining good cause, we're not even supposed to consider how frequently other petitioners would be able to raise a particular excuse. In fact, it actually chastised the district court in that case for conditioning a rind stay on how frequently other petitioners would be able to raise the same sort of excuse. So with that... So Mr. Shah, I know you're really close to the end of your time, but I will assure you that Judge Pius has been very generous all week in allowing counsel some additional time and time on rebuttal. So I'm going to take a little bit more of your time to ask you a question. I think the point that Judge Gordon raises is interesting with the way the Dixon decision is written, that we aren't opening floodgates because of these other two prongs to consider. But there seems to be some tension between that idea and the idea that this court should, in the first instance, just decide the other two prongs. I mean, if the other two prongs are a safeguard here so that we're not just, you know, every uncounseled petitioner gets their rind stay, shouldn't we take those two prongs a little more seriously and send them back for examination in the district court? I mean, I certainly think this court can if it feels there is more of an issue with this record and there are issues to be developed on each of those prongs. I just don't, I just think that on the existing record, this court can easily, can sufficiently dispose of those two requirements because the state hasn't even contested the third one. There's no evidence supporting it. All of the record suggests that that third prong doesn't apply in this case. And as to the second prong, the burden of proof on the petitioner is just so low that, and Mr. Cage, Mr. Cage has introduced evidence that could easily meet that particular standard. So I think that while this court should take those two other requirements seriously, I think that in this record, it has more than enough evidence to rule in Mr. Cage's favor on those, on those two prongs. Okay, let's hear from the state. I'll give you some time for rebuttal. Thank you. Good morning, your honors. Christopher Beasley, deputy attorney general on behalf of the respondent. The question before this court is whether the district court used its discretion, right? And that's a, that's a very difficult burden usually for the other sides to overcome because we're looking for whether the district court basically lost its senses, whether the decision was arbitrary, capricious, absurd. Looking at Ryan's, the first requirement of that is a good cause requirement. And Judge Gordon is correct that if we were to adopt the petitioner's position, it would read right out of Ryan's, that first prong of good cause, because almost every state habeas petitioner doesn't have counsel at the outset. But isn't, isn't, isn't that what Dixon did? And according to Mr. Shaw's interpretation of Dixon, that's what this court has already said. There is a distinction. You pointed out, or asked actually earlier, Judge Beatty, whether there's a difference as to the fact that in Dixon, the petitioner had in fact filed a state habeas petition. That is a difference. And it does make, it is a distinction. It does make a difference because the petitioner in Dixon actually did try to get his rights remedy in the state courts in the first instance. The fact that he wasn't represented then later was what established the fact that he was able to show good cause. Here, Mr. King did nothing. He could have filed a petition. He could have filed the very selfsame petition that he filed in the district court in the state court on the same day. And he could have asked the district court for a Kelly stay at that point. He could have then gone into the state courts, sought the relief. If he had been able to secure an order to show cause, he would have been appointed counsel. But here he hasn't even given the state courts a chance at all. That cannot constitute good cause in this kind of a case. He needed to have done something. And that something was to file at the very least a state habeas petition. His failure to do so shows that there's no good cause. And there was nothing arbitrary or capricious about the district court in concluding that there was no good cause showing given that failure on the petitioner's part in this case. Now, if I can interrupt, let me follow up on that point, Mr. Beasley. I'm still not sure why that matters. The fact that he would have simply filed a protective petition or just filed a one page petition, for instance. What does that matter? Because Dixon contains a safety valve there. It says you can't simply make a bald allegation of ineffective assistance of counsel. You've got to have some evidence. And so doesn't Dixon still protect against getting rid of the first prong of lines by saying, you can't just simply say I didn't file or I didn't have counsel. There's still some evidentiary requirement to demonstrate good cause. I'm not sure that I'm following the court's question. I guess you're requiring, your position is we would require the petitioner to file something in state court. Yes. I don't see why. If they file a one page petition that says I challenge, is that enough? And if so, why, if there's nothing really there? Dixon says there has to be some enough. Well, what we've got here is we've got also the rule from Lundy. He needs to exhaust his claims. So he needs a one page petition might be enough. If he can plead sufficient facts to exhaust the claim to give the state courts notice of what he is alleging and what it is that he's wanting in terms of a remedy that that's the exhaustion requirement from Rosie Lundy. Now by filing something in the state courts, he at least gives the state court an opportunity to rule on that by filing it in the state courts. And particularly in the California Supreme court, he will have exhausted his claim. If he then fails to get relief, fine. He's able to come to the federal court and he's able to present his claims in the federal court, but the failure to even present it in state court, the failure to do anything in the state court should bar the claim federal court under exhaustion. And then in terms of the fact that did nothing on the good cause grounds for the fact that he wanted to stay and he couldn't show that he had done anything to protect his rights. He really did sleep on his rights. He had every opportunity to file something in the state court, to exhaust the claims, to let the state court know what it is he wanted. And to, um, that raises two points in my mind, at least the first is, isn't that what a Ryan stay is all about? Um, he's acknowledged. He has a mixed petition. He has unexhausted claims. And if he has to stay, then he'd go back and do exactly what you're suggesting, try to exhaust those claims in state court. Um, and the second is that, uh, as Mr. Shaw points out, there are two other prongs. And the third one is whether, um, he, he was dilatory or addresses that factor. Um, so why isn't that sufficient to address the state's concerns? Well, I would submit as to the latter part that it's insufficient because it just reads right out of Ryan's the first prong of Ryan's. I mean, the fact that the U S Supreme court has given us those three prongs, there's a reason for that. They serve a purpose. And so to just read that out and suggest that, Oh, anytime that you have a state habeas petitioner who has failed to file anything in the state court, he didn't have counsel because he didn't bother to file anything in the state court that establishes because it reads that right out of Ryan's for almost every petitioner. And then in terms of the, uh, the, the first part of the question, which I'm forgetting now, it was about the third prong of, of, um, Ryan's and why it is, isn't enough to address your concerns about whether, um, I'm just being dilatory, right? Right. And so that the dilatoriness of this is, is that, that, yes, that's certainly something that we can rely upon, but I think that it's a, it's a three, it's a three-part test and the Supreme court also in Ryan said, this is to be used in limited circumstances. The problem, uh, Mr. Beasley is that Dixon is binding precedent in this court. So are you suggesting we should take Dixon on bond because it eliminated the first prong of Ryan's? No, because in Dixon, the person that the petitioner actually did file a state habeas petition. That's the difference. He did file a state habeas petition. He did try to, to, to exhaust his, his remedy in the, in the state courts. He did everything he was supposed to do. And so that extension of the Martinez rule in Dixon, there's no problem. It's perfectly fine. It's perfectly valid because he did try. But in this case, with a petitioner who has done nothing to try to exhaust his, his claims in the state courts, and there was no impediment whatsoever from him doing so, that's what makes the difference. And so Dixon doesn't read out of Ryan's that requirement. It simply places implicitly a burden upon the petitioner to file something in the state court. And if he has failed, then he can, he can show that there was good cause in the absence of counsel because he may not have been represented or he may have received ineffective assistance of counsel in the, uh, in the post conviction setting if he had an attorney. But that's, that's the, that's the point is that he did something in, uh, in Dixon. He did something to preserve those rights in the state courts here. Cage has done absolutely nothing to preserve those rights. And well, didn't, didn't, didn't he try to get his file? I mean, he attempted to get it from prior counsel. In a sense, one would argue we should applaud him for upholding rule 11 civil procedure rules that he's not filing a petition without doing a reasonable investigation. First, he's trying to get his file. He's trying to get the information so that he can file a worthwhile petition, but he didn't have counsel. If he had had counsel, it would have been easier to get the file and make those decisions. So why doesn't that constitute evidence of good faith under the first front of lines? Because there was no impediment outside of his control to filing a state petition. Yes, he made an effort to get the trial file. He's made no effort to explain why it took a year and a half to get over a year and a half to get that trial or the trial file from, from his wife. And he has identified in his, uh, in his petition that he filed in the district court. He identified the claims together with what it was that he needed from the trial file. He hasn't told us why it is that he couldn't ask his wife specifically. I need these police reports. I need these witness reports, this blanket assertion. I need the entire trial file. That's insufficient to establish good cause when the Supreme court has said it requires, this is for a limited kind of showing he could have filed. And as I said earlier, he could have filed the same petition that he filed in the federal court in the state courts, and that would have exhausted his claims. That would have been enough to exhaust his claims. And then he would be able to proceed on the petition as he had filed it. But because Mr. Beasley, if we, if we weren't to adopt your, um, uh, interpretation and application of Dixon, um, did the state wave argument on the second and third prong? I don't think so because for the litigation at this point has focused on that first prong. It hasn't focused on the second and the third problems. And so we haven't waived anything. I think that the proper remedy, if this court disagrees with our interpretation as the first prong of Ryan's, the correct remedy would be to remand it to the district court to, in the first instance, consider the second and the third problems of Ryan's inquiry. But I would urge this court to not expand the, uh, the Ryan's rule beyond what it was contemplated to do. And I would urge this court to recognize that under the abuse of discretion standard, there was simply not that kind of abuse here. And with that. Just a couple of points, Your Honor. Um, Mr. Beasley suggested that there was no impediment to Mr. Cage's filing of a state habeas petition in this case. I would humbly disagree. The impediment was made clear in all of the briefs that he submitted to the district court. The impediment was the California Supreme Court's decision in People v. Duval. Duval required him to submit some kind of documentary evidence in support of his ineffective assistance claim when he filed a state habeas petition in state court. Otherwise it would be procedurally barred. And because of that, because of his attempt to follow those state rules, he waited on filing a state habeas petition before and waited until he got the documents that he needed. And the tragic irony of this case, Your Honor, is the whole reason he wasn't able to get those documents is because he didn't have state post-conviction counsel. If he had had counsel, he would have had the resources to get those documents. He wouldn't have had any of the difficulties in getting those documents from either his trial counsel or his wife. He would have been able to get those documents and he would have been able to file a state habeas petition. The state faults him for not filing a state habeas petition, for not asserting a prima facie case to relief, for not getting himself appointed counsel in state court. But all of these steps, they all come from the same problem, the fact that he wasn't appointed counsel in the first place and wasn't able to do any of these things. So I think that he was significantly impaired in his ability to file a state habeas petition in the first place. And his lack of counsel is the reason why. Mr. Beasley also suggested that he should have asked his wife for specific police reports in his trial counsel's file. But with respect, it was impossible for him to know exactly what was in his trial counsel's file. And it's unreasonable to expect a pro se petitioner to know in advance without seeing the entirety of the file, what exact materials he wants from it. And moreover, when asserting an ineffective assistance to trial counsel claim, it's not enough to just have certain police reports showing witness statements. You have to have the entirety of the file to establish what investigation trial counsel did do and what investigation trial counsel didn't do. Those are relevant documents for establishing efficient performance under Strickland v. Washington. So even if he had tried to do that, that wouldn't have given him all the materials he needed. So in the end, I mean, it's really the lack of counsel that's the decisive factor here. His lack of counsel rendered him unable to get the documents that he needed. Lastly, your honors, the state, Mr. Beasley suggested that the second and third requirements were not the focus of litigation below. With respect, I would disagree with that point. And the reason I say that is that the proceedings below unfolded as follows. Mr. Cage submitted a motion for a Ryan stay addressing all three of these requirements. In opposition, the state had the opportunity to address all three requirements. It only addressed the first and the second. It didn't address the third. And thus, the state had an opportunity to do so and waive the third requirement. I would also note, your honor, that Mr. Cage later filed a motion for reconsideration of this issue. Again, the state failed to raise the second or third requirements in any opposition to Mr. Cage's motion for reconsideration. So I believe that the state has waived its arguments on the third prong and Mr. Cage can easily meet the low bar that he needs to prevail on the second prong. So for all of those reasons, we would ask that this court reverse the district court's judgment and remand for issuance of a Ryan stay. Is Judge Paz's microphone off? We can't hear Judge Paz. I'm sorry. Thank you, counsel. I appreciate your arguments and matters submitted at this time. Thank you very much. Thank you. This court for this session stands adjourned.
judges: Paez, Gordon, Bade